**KOLLER LAW LLC**
David M. Koller, Esq. (90119)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MONICA ALVAREZ** | : | **Civil Action No.** |
| **6 Thomas Drive** | : | |
| **East Berlin, PA 17316** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **CAMPBELL SOUP COMPANY d/b/a** | : | |
| **CAMPBELL'S SNACKS** | : | |
| **1350 York Street, P.O. Box 6917** | : | |
| **Hanover, PA 17331** | : | |
| | : | |
| **1 Campbell Place** | : | |
| **Camden, NJ 08103** | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Monica Alvarez (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Campbell Soup Company d/b/a Campbell's Snacks (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") wrongful discharge in violation of public policy and the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

### **THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Campbell Soup Company d/b/a Campbell's Snacks is a processed food and snack company with a location at 1350 York Street, P.O. Box 6917, Hanover, PA 17331 and with a corporate headquarters located at 1 Campbell Place, Camden, NJ 08103.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweek in the current or preceding year.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise

of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because some of the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted her administrative remedies under the Americans with Disabilities Act of 1990, as amended and the Pennsylvania Human Relations Act.

15. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination against Defendant.

16. The Complaint was assigned a Charge Number of 530-2020-05078 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated May 21, 2021.  Plaintiff received the notice by electronic mail.

18. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of her receipt of his Right to Sue in this matter.

20. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. On April 11, 2005, Defendant hired Plaintiff in the position of Packer.

23. Plaintiff was well qualified for her position and performed well.

24. Defendant promoted Plaintiff to Machine Operator followed by Packaging Technician.

25. Plaintiff was well qualified for her position and performed well.

26. On May 11, 2020, Plaintiff's mother, who Plaintiff lives with, was treated at Gettysburg Hospital for a variety of health issues that she suffers from.

27. Plaintiff's sister-in-law took Plaintiff's mother to Gettysburg Hospital for treatment.

28. Plaintiff's mother was given a COVID-19 test by the treating physician as a precautionary measure.

29. However, the treating physician stated that Plaintiff's mother most likely did not have COVID-19 due to the results of her CT scan.

30. On May 12, 2020, Plaintiff reported to work at Defendant and answered "No" on the Pre-screening Questions #2 and #4, which asked respectively, "In the last 14 days have you come into close contact with someone who has tested positive for COVID-19?" and "Have you or any member of your household had respiratory symptoms (coughing, sneezing, shortness of breath, difficulty breathing, persistent pain or pressure in the chest), joint aches, loss of sense or smell or taste, and/or a fever within the last 72 hours (3 days), excluding the following known medical conditions: Asthma & seasonal allergies?"

31. Plaintiff's mother had not tested positive for COVID-19 and she was suffering from body aches, which were a symptom not listed on Defendant's Pre-screening questionnaire.

32. Plaintiff answered this questionnaire truthfully.

33. In addition, Plaintiff did not have any contact with her mother on May 12, 2020.

34. On May 13, 2020, Plaintiff did not report work, as she took a personal day to take care of her grandmother.

35. That afternoon, Plaintiff's mother's COVID-19 test came back positive.

36. Plaintiff immediately called Becky Emlet, Human Resource Plant Regional Lead, and left a message informing her about Plaintiff's mother's positive COVID-19 test.

37. Plaintiff then proceeded to call Ashley LNU, Human Resource Representative, and notified her of her mother's positive COVID-19 test.

38. Ashley informed Plaintiff that she would be quarantined for 14 days before she could return to work at Defendant.

39. Shortly afterwards, Ms. Emlet returned Plaintiff's call and informed her that she was with Julie LNU, Safety Manager.

40. Plaintiff explained the situation of her mother's positive COVID-19 test and that she did not have contact with her mother since May 10, 2020.

41. Ms. Emlet proceeded to reprimand Plaintiff for reporting to work on May 12, 2020 and accused her of lying on the pre-screening questionnaire.

42. Plaintiff answered the pre-screening questionnaire truthfully and explained this to Ms. Emlet.

43. Later that day on May 13, 2020, Plaintiff was tested for COVID-19 at Gettysburg Hospital.

44. The next day on May 14, 2020, Ms. Emlet called Plaintiff and inquired if she had any symptoms and had undergone a COVID-19 test.

45. Plaintiff informed Ms. Emlet that she did not have any symptoms and that she had taken a COVID-19 test the day before.

46. Plaintiff also notified Ms. Emlet that her mother was quarantined in her room.

47. On May 16, 2020, Plaintiff was notified that she tested positive for COVID-19.

48. Plaintiff immediately notified Ms. Emlet of her positive test results via email.

49. On May 22, 2020, Ms. Emlet called Plaintiff and accused her of not informing Defendant that she lived with her mother and grandmother.

50. Plaintiff told Ms. Emlet that she had previously informed her of this.

51. Ms. Emlet informed Plaintiff that she would be able to get Plaintiff back to work at Defendant the following week.

52. However, Ms. Emlet did not contact Plaintiff about her return to work as she had stated.

53. Plaintiff called Ms. Emlet multiple times and left voice messages for her, but she did not return Plaintiff's calls.

54. On June 3, 2020, Ms. Emlet called Plaintiff and terminated her for allegedly not answering the pre-screening questionnaire correctly.

55. It is Plaintiff's position that she was discrimination against due to her disability ("COVID-19") in violation of the ADA. Defendant regarded Plaintiff as disabled and terminated her because of that in violation of the ADA and PHRA.

## COUNT I – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

56. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

57. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

58. Plaintiff was qualified to perform the job.

59. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

60. Defendant regarded Plaintiff as disabled and terminated her because of that.

61. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

62. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

63. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

64. The purported reason for Defendant's decision is pretextual.

65. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

66. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

67. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

68. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

69. Plaintiff has disabilities that substantially limit major life activities.

70. Plaintiff was qualified to perform the job.

71. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

72. Defendant regarded Plaintiff as disabled and terminated her because of that.

73. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

74. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

75. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

76. The purported reason for Defendant's decision is pretextual.

77. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

78. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – WRONGFUL TERMINATION

79. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

80. Plaintiff was an at-will employee with Defendant.

81. Although Pennsylvania adheres to the at-will employment doctrine, an employee may bring a cause of action for termination "where the termination implicates a clear mandate of public policy." *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009).

82. Defendant terminated Plaintiff during the COVID-19 pandemic for acquiring COVID-19.

83. This is a violation of the at-will employment doctrine in Pennsylvania as it implicated a clear mandate of public policy against terminating an employee for acquiring COVID-19.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – INTERFERENCE
## FAMILY MEDICAL LEAVE ACT, FMLA 29 USCA §2615(b) *et. seq.*

84. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

85. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

86. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA leave in order to care for her own serious medical condition.

87. Plaintiff gave Defendant proper notice of her own qualifying serious health condition under the FMLA.

88. Defendant, at all times, was aware of Plaintiff's serious health condition.

89. Plaintiff was entitled to benefits under the FMLA.

90. Defendant acted in bad faith by failing to inform Plaintiff of her rights under FMLA.

91. Defendant unlawfully prevented Plaintiff from obtaining those benefits.

92. Defendant acted in bad faith by interfering with Plaintiff's ability to apply for FMLA.

93. Defendant knowingly, intentionally, willfully and/or recklessly acted in disregard of the duty to allow Plaintiff FMLA-related leave for her own serious medical condition.

94. Defendant's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1)

95. As a result of Defendant's conduct, Plaintiff suffered adverse employment actions causing her harm.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.


**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Monica Alvarez, requests that the Court grant her the following relief against Defendant:

(a)   Compensatory damages;

(b)   Punitive damages;

(c)   Liquidated damages;

(d)     Emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and the PHRA.

(j)     Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## **JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

## **CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: August 19, 2021            **By:**   */s/ David M. Koller*

David M. Koller, Esquire (90119)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com

*Counsel for Plaintiff*